21-1293. We'll be hearing first from counsel for appellate, Mr. Glaser. If there's any time that you'd like to reserve for rebuttal, please let us know. Thank you. No, I don't know that we're getting audio right now. We seem to be having an audio problem. Yes. Okay. Okay. Jason is now on mute. Okay. Your Honor, how are we doing now. Looks good. Yep. Sounds good. Okay, we have success my apologies. Thank you. So once again, Your Honor, Joseph Glaser from the law office of Joseph D Glaser on behalf of Temple University Hospital and if I may, I'd like to reserve four minutes of my time for rebuttal. Okay. This case is straightforward. It's an interesting case. But even though the Medicare act is infamous for its complexity. This case really doesn't require us to delve that deeply into those complexities. It really boils down to a relatively simple concept. When Congress tells an administrative agency that it had to do something. The administrative agency in fact has to do it. And that is the case, even when the agency doesn't agree. With Congress. The statute here, the three year reclassification decision statute. As I've called it just for clarity sake. It really is a model of comprehensive clarity. Not every statute that comes before the score is going to have a bright mind rule that can relatively easily be applied. This one does. Once you get a geographic reclassification approved. It's valid for three years. There's no, if there's no, but there's no, except for. There's no discretion with the agency. In fact, it removes discretion from the agency. And Congress. Let me just, let me just interject. That statute is not read in isolation. That statute's read in light of an overall statutory scheme. And in light of other statutes that permit. Reconstitution of geographical areas. Absolutely. Your honor. And we don't contest that the agency is somehow prevented from reconstituting or changing geographic areas. We don't contest that. We don't contest that the agency has to apply it in a certain way. What we do say is that when the agency does that, That it has to apply it in a certain way with respect to hospitals with an existing reclassification. And it has to be applied. So it doesn't violate. The specific statutory mandate. That governs that reclassification. And Congress really could have easily. Granted discretion to the agency could have said it may be effective for three years. Congress could have said it. It shall be effective unless the secretary decides differently. Or even could have addressed the circumstances here, which Congress knew existed because. Of some actions that have been taken by the agency about four or five years before this statute was enacted. Congress easily could have said it shall be effective for three years, except when the secretary reconfigures. A wage area. Congress didn't say that. What did this say is it shall be effective. For three years and that broad discretion that your honor noted that applies in many areas of the Medicare act. The fact that there is broad discretion. I think it's incumbent upon the secretary and the courts to then be especially attuned when Congress tries to limit that discretion as it does here. And as we noted in our brief, there is one. Discretionary aspect. In the three-year reclassification statute. And it's left at the hospital, not the agency. So we know that Congress. Discretion. They simply didn't do so here for the agency. Let me, let me just, let me just pick up on this theme, right? Because, because a lot of what you say at the outset really resonates with me. This is such a complex regime and it's, it's grown that way. It's gotten bigger and bigger and bigger over time. And every now and then we have these kernels of clarity. And one of the kernels of clarity that you're saying is this three-year this, this, this, this three-year limit, or almost guarantee, but you know, and I don't mean to push you into this other issue because I know you're going to get to it, but it strikes me that another kernel of clarity is the channeling. The kind of mandatory jurisdictional channeling that has to happen. And I don't think it's in the record that that happened here. It's so amidst this sea of, I think, complexity. I can see that three years is very clear without exception, but I also can see that channeling is very clear without exception. And unfortunately for you and your clients, we do the channeling clarity first. What do you say? Sure. Well, I can dispute that clarity, excuse me, that channeling is required without exception. That's that's not the case here. And the Geisinger court recognized that. Let me make sure I'm following you. What do we mean by channeling? Where you have to go to the administrative body first before you can go to court. And I use that channeling language because that's what the secretary used. And I don't object to it in terms of the language. Sometimes you need some translation into bureaucracies. And I think this derives from Justice Breyer. I think this, I think that he in Illinois council crafted this first. Maybe someone else did, but he at least gets the credit in my book. I think that's correct, Your Honor. The credit of the blame, we'll leave that for others to decide. So we have this, we do have channeling that occurs here, but we also have a very recognized exception and an exception that applies generally in certain contexts in the Medicare under the Medicare act, but one that applies specifically in the MGCRB, the Medicare geographic classification review board context. And that is probably a unique context in terms of the Medicare act. I'm certainly not aware of one that has the finality that attaches to the CMS administrator MGCRB decision on a reclassification decision. And the cases that we cite in our brief Geisinger is one from the third circuit. Lawrence and Memorial is one from the second circuit. Bates County is one from the district of Columbia. Those cases really do stand for the proposition. I believe that when you're talking about a policy, a rule, a regulation, and to be honest, I'm not quite sure how we would describe what's been done here. Is it a regulation that just hasn't been codified or simply policy? I'm a little unclear. And the secretary might have some view on that, but when you have this finality, that's going to apply and there's no review, there has to be a pathway for the courts to see this issue quickly. And we know here, we actually now have a specific time team. Our brief was a little ambiguous as the deadline date for temple to make its decision. But yesterday or the day before the agency issued a proposed rule, it's going to be published on May 10th. And by my math, that means as of June 24th, temple will no longer have the right to withdraw its reclassification to what we call the mitigation violence. And we call it mitigation for a very good reason. The only reason it was pursued was because of what the agency has done. And Geisinger, it's true that in Geisinger Lawrence and Memorial in Bates County, we were talking about rules that govern the agency's decision. But what happened here is by visiting such an enormous economic harm on this hospital and the patients and communities that it serves tens of millions of year, a year, the agency is foisting that decision on the hospital and the hospital has to make it. And this court, I believe needs to provide the guidance for the hospital and the agency to understand. And so I think the answer is that Congress appreciated a lot of that. And they said, that's why we're going to channel this first through a, through the administrative process. And then to courts, it wasn't a complete bar on courts. And as I understand the law, it basically goes like this. Everything must be channeled. This is kind of Illinois council unless channeling is the practical equivalent of a total denial of judicial review. And that way, Illinois council accounts for Michigan academy. And so it strikes me, and maybe I'm wrong on the law, but it strikes me that everything's channeled unless it's the practical equivalent of a total denial of judicial review. And in order to avoid channeling, you have to demonstrate is the party in Illinois council could not do that. This would be the practical equivalent of a total denial of judicial review. And so if that is the, you know, a, do you disagree with that center? But B, if that is the standard, because maybe that's, you know, speak only for myself, how I read the law, what do you have to say for how you meet that standard? We are facing a situation where we will be completely precluded from any judicial review of the impending reclassification to the mitigation violence. CBSA, the agency agency itself has said, and I think the agency actually has the opportunity through regulations to change this, but that that's a issue for down the road. The agency has said that no matter what this court does or any other court does after June 24th, if that reclassification goes into effect, the agency is not giving this hospital a dime, excuse me, for the last two federal fiscal years, it will terminate the New York, New Jersey CBSA reclassification. The agency said that now it's relegated to a footnote. So perhaps that lessens the great importance here. Isn't it true that temple hospital never got into the New York, New Jersey CBS, whatever it, that had not yet taken effect when that area in fact was eliminated. So how can they talk about the great harm that's caused to them by not being in that area when they never actually got into it in the first place? So your honor, they did actually get into it. They got into it when the MGCRB made the decision to reclassify temple to the New York, New Jersey CBSA, that, that decision was non-reviewable and it is valid for three years. And that's in fact what the statute says. Now you're correct that the secretary's actions policies, which we believe to be unlawful prevented the hospital from getting the benefit and the benefit that Congress intended with that three year statute. So you're absolutely correct that the secretary did in fact prevent the hospital from getting the revenue that it was entitled to receive under this statute. But it did in fact become final that reclassification upon approval, but it did not become effective. It would have gone into effect October 1st, 2020. You're correct. So the, but the CBSA was dissolved before it became effective. The answer is no, it wasn't dissolved, your honor. And we cite some examples. I agree that it was. It disappeared. It no longer was. That's not correct. It still exists. It just has different counties that constitute it, your honor. And that's a situation that happens regularly. We see that and we've seen that in the secretary's actions, for example, back in 1993, where we had really an identical situation to what happened here. And that predates the reclassification three or reclassification statute, but the agency faced essentially the same circumstance where it had approved hospitals for reclassification to an area. And then it reconfigured the area several months later, effectively removing accounting from that area. And the question then was because the link to that county had been essentially eliminated, does the reclassification take effect? And the answer from the agency was yes. Now the agency has highlighted in this brief that it's free to change its mind. And the answer normally might be, you can change your mind in the future, but not when Congress says you can't, which is what they did here. So we wholeheartedly agree that there's been a reconfiguration. It's really when the secretary can implement that reconfiguration for temple and other hospitals with the three or reclassification that's at issue. So my time, I know this is up your honor in terms of my initial presentation. If there's no questions, perhaps I'll just return to some of these issues on rebuttal. Okay. I have no question. I have no further questions. I have no questions. The floor is yours for 15 minutes or the virtual floor is yours for 15 minutes. Thank you. Good morning. And may it please the court, Thomas Pullen for the secretary and the government defendants. I'd like to start with the discussion of jurisdiction. Temple here challenges a policy adopted by the secretary during the annual rulemaking for the inpatient prospective payment system. The Medicare act provides administrative review followed by judicial review of such a challenge as temple itself recognized in this very litigation in its complaint. Now where the Medicare act provides such an avenue for review, section 405 H forecloses alternate bases of jurisdiction. This case presents a straightforward application of what your honor described as a clear requirement in 1395. Oh, and the principles recognized by this court in St. Francis and by the Supreme court in Illinois council now opposing council has said that no judicial review would be available, but he specifically referred to, there would be no review of the reclassification to the Vineland CBSA. That isn't the challenged action here. The challenged action is the portion of the secretary's rulemaking for fiscal year 2021. And there would be judicial review of that after it went through the reimbursement board council hasn't cited any cases where courts have held that a party can access federal question jurisdiction under 1331 in these circumstances. Now at other times in its brief temple says, well, we might not be able to get the full relief that we wanted. First, there's no reason to believe that full relief would not be available. Assuming that temple didn't take voluntary action to terminate its New York classification. And even if full relief were not available, that's not enough to get around a mandatory channeling requirement as this court held in St. Francis there, a party said, well, we may not get all of the money for one year that we think we're entitled to. And speaking for the court, then judge Alito said, that's not enough to get a federal question jurisdiction under 1331. So, and so, so let me just jump in here. Again, I could be wrong with how I read the law, but I read the law is we have this very strange around 1984 decision, Michigan Academy. We have Illinois council where we have basically the sum total of everybody on the Supreme court saying something was wrong with Michigan Academy, but we don't want to overrule Michigan Academy. So we're going to kind of make a carve out for what Michigan Academy says. And it basically says, look, if the channeling process is the practical equivalent of a total denial of judicial review, then it precludes it and we have to follow the rule in Michigan Academy. Otherwise we don't, but it's not on HHS and it's rulemaking or CMS or anyone in this rulemaking or in his briefing to establish that practical equivalent of a total denial of judicial review. That's on whoever says that they don't want to go through the channeling process. And I guess my question though, is how exactly does someone go about making a claim along those lines, especially when that issue is not raised by the government in district court where we aren't going to allow new S we aren't going to allow new testimony. We aren't going to allow new evidence here. If they say, if the reply brief came back and say, you know, that's a really good point. We weren't, we weren't prepared to address this because it didn't happen below. We'd love to make this argument. We've got a million reasons why we'd like to make this argument. All of them are fact bound, of course. And, and now here we are. And so it's kind of strange because the defense it strikes me to the channeling requirement is fact bound. And here we are on appeal with an issue, not raising district court, the possibility of a fact bound defense raised for the first time in a red brief on appeal that seems to put the, the defense in a position where it doesn't want channeling and thinks channeling is a bad idea at a bit of a disadvantage. You at least see the disadvantage angle, right? Well, I'm not sure it really is. I mean, first the temple had its you know, a reply brief to devote to this. It offered reasons. But the reasons it's offered did not establish anything close to a total preclusion of judicial review. And I'm not sure that what, what, what if their reply brief said, we have a million reasons. They're going to require a lot of affidavits, a lot of deposition, a lot of discovery interrogatories. We'd like, we'd like all these other things to make our reasons. What do we do if, if they come back with that in their reply? Do we say, well, notably temple didn't temple didn't express any need for further development. And I don't think this is that kind of factual issue where you would need interrogatories or affidavits. I mean, I think this is something that a party would kind of establish by looking at the the way the law works, they would make a legal argument that judicial review won't be available. And I think. So you're challenging the premise. I said they might have fact-based arguments available. And essentially what I hear you saying is no, no, no. It's, it's, it's only a legal determination. And we can evaluate that on the law because, because the avenues of other attack, collateral attack, anything like that should be manifest in the law, regardless of any facts. I think that's right. And more specifically in this case, temple never advanced the argument that it had, that this might be the unusual circumstance where there were, there was some kind of fact case specific reason why judicial review wasn't available. But, but I do think that the Supreme court in in Illinois council provided some guidance here on pages 22 to 23 of the opinion, where it said that, you know, we don't hold that an individual party could circumvent section 1395 IIS channeling requirement simply because the party shows that postponement would mean added inconvenience or cost in an isolated particular case. Rather, the question is whether as applied generally to those covered by particular statutory provision, hardship likely to be found in many cases turns what appears to be a channeling requirement into complete preclusion of judicial review. So we're looking at how this operates generally, not kind of the specific facts in one party's situation. You know, maybe, maybe now is a good time, unless judges Roth or Nygaard have questions to pivot to you've got the channeling argument and then we've kind of got what I would, what I might call, you know, the merits, the more merits argument and your opposing council leads with a point that really seemed, it was a good, it was a good point to lead with. I'll just leave it at that, which he says we have clarity in this three year provision. And as I was thinking about this, I was, I recall reading recently in the news that as a result of the decennial sentence, some states are going to lose representatives, lose seats in the house of representatives, and some are going to gain seats in the house of representatives. But our constitution says every representative serves for two years. So although we know right now that I think Pennsylvania lost a seat and that's that happened to be my residence. So that's probably the context that I read this, but although Pennsylvania lost a seat, those representatives are guaranteed by the constitution to serve out their two year term. And so, so, so there may be a huge reconstitution, reconstituting that happens before the next election midterm election, but they have been, they have a constitutional guarantee to serve out their term. We don't say, Oh, Pennsylvania loses a representative now. It's a bit of, it might be a strained metaphor at some level, but the clarity of two year term amidst the reality that things will be reconstituted does seem to work pretty well here because we have clarity of effective for three years amidst the countervailing reality that things will be reconstituted, but it doesn't seem that you can say that that reconstitution can override a three year guarantee. What do you think? So I think that that's not actually the approach that the the secretary took. The secretary didn't simply cancel reclassifications and say, okay, everyone go back to your geographic area. The secretary said, well, the geographic area to which you've been reclassified no longer exists as a kind of relevant labor market with its own wage index under the system. So I have to figure out where to put you. The statute doesn't address what it means for reclassification to be effective in those circumstances. I'm sorry for interrupting, but in the metaphor that I gave you, would that mean that if Pennsylvania loses a seat right now and we know that Pennsylvania is going to lose a seat right now, I think, I think that's the headline I read. Forgive me. I should have, I should have verified that. And that seat goes to Florida or Texas or another state that gains it. Does that mean that it's not that Pennsylvania lost that seat, that representative now just happens to represent the 11th district of Texas now? Well, because that analogously seems like what you're saying, which is you just went somewhere else. I'm certainly not an expert on redistricting, but I don't think this is a situation where the congressional district has ceased to exist right now. But I'd like to just point out that Temple's argument really depends on this idea that the revised New York area labor market shares a name and designating number with the area that it was assigned. Temple was never assigned to the collection of counties that make up the New York area as currently constituted. That area, as the secretary pointed out, there's evidence that it constitutes a different labor market from the proximate counties to which Temple was assigned. The average wages were much higher in New York city than in the counties near where Temple was assigned. Now it's not always the case that when a labor market is split apart, it's split apart into something that continues with the name and number. It happened in this rulemaking that the labor market for Chicago was split into two. One county went into a preexisting labor market. The rest were assigned to a labor market with a new name and new number. Now Temple's argument wouldn't explain what to do in those situations. And I think when we have these kinds of revisions, the secretary could be faced with a number of possibilities and this shows kind of the ambiguity that's present here. The secretary could say, okay, I will assign you to the market with the same name or the same number. That's kind of what Temple argues for. Why isn't the option, we guaranteed you this wage index, this wage index factor, 1.3 something for New York. You get it for three years. We'll play through later at some point in time, we've reconstituted things. What district you wind up in eventually. Okay. We'll sort that out in three years, but once you got it, we promised it to you. We can maneuver things all around we want, but it says shall be effective for three years. And it's very hard that that is being effective for three years. Well, the secretary said he, he did believe that the reclassification was effective for three years because it maintained the hospitals in reclassified status. The question was which geographic area to assign them to. And I just want to be clear that Temple does not ask here to be assigned to a, a labor market consisting of the same collection of counties to which it was assigned previously. Temple says we should be able to be assigned to what is now called the, the new, the revised, the current New York labor market area. That market area has a significantly higher wage index precisely because the, the counties proximate to Temple have been removed from it. Now that the secretary's assignment policy advances the kind of overall statutory purposes of all of the relevant sections, the wage index provisions that give the secretary extremely broad discretion to calculate this factor and to provide for transitions and the purpose of reclassification, which this court described as providing comparable reimbursement to hospitals that compete for the same labor pool due to their geographic proximity. Temple has asked to be reimbursed based on the labor pool in New York city, not based on the counties to which it is in fact geographically proximate. So nothing in the statute guarantees Temple that kind of, of windfall here. Now it could have been that one of the possibilities the secretary adopted was as your honor suggested, well, we will preserve the sign of the kind of same collection of counties temporarily and give you a wage index for that. The area has previously constituted that would require basically the maintenance of a kind of shadow wage index system. And nothing in the statute provides for that. And you would expect something a lot more explicit as to how the reclassification provisions relate to the secretary's broad authority over the wages. If that was going to happen. Let me just trace back where I think I heard you just say, and let me just make sure that I got what you're saying is, look, when we read this shall be effective for three years, language. That shall be effective for three years. Language. Does not connect to wage index. It might connect to other things, but it doesn't say that your wage index will be effective for three years. It talks more about your, the districting, the district that you would be in is that well, the wage index changes every year, whether a hospital is reclassified or not. This is something that's calculated annually for each area. So it's certainly not the case that a party is entitled to a fixed wage index for three years. What I think the statutory provision speaks to is a classification to a geographic area. And that geographic area as judge Roth indicated in her question, that area ceased to exist in, in the same way so that you can't kind of apply the reclassification decision seamlessly, but the secretary said qualifications. To be put in a particular geographic area. You have to be within 35 miles of a, of a county, et cetera, et cetera. Is this established by statute or by regulation? The specific requirements are established by regulation. The proximity and wage requirements are established by regulation. So the secretary strove to balance these kinds of proximity requirements, longstanding requirements. It's existed as long as reclassification has with the statutory provision, providing that reclassification shall be effective for this period of three years. And the secretary said, I'm maintaining your reclassified status. We just have to figure out where to put you. And because the statute doesn't specifically address how these two provisions will interact. And given the need to create kind of a cohesive hole that creates a gap for the secretary to fill. And we believe the secretary filled that reasonably here. Thank you very much. Any questions, judge Roth or Nygaard? I have none. I have nothing further. Thank you very much. We'd ask that the suit be dismissed for lack of jurisdiction or if jurisdiction exists for the judgment to be affirmed. Thank you. Thank you. I believe Mr. Glaser that you've reserved four minutes for reply for rebuttal and the virtual floor is yours. Thank you. I'll come back to the standing issue in a moment, but I did just want to hit a couple of the points that were just raised. And, and really it seems to be what the secretary is saying. When circumstances change, whether it's geographic configuration of a CBSA or some other circumstance, all the secretary has to do is reclassify a hospital somewhere, anywhere. The secretary is essentially saying that they have to reclassify a hospital for three years, but it's not fixed. And it's not clear to me how the statute really matters. If it's not fixed for three years, because then no reclassification can ever be guaranteed to any area, whether it's because the secretary has decided to change. Let's say for example, right now, you have to be within a certain mileage of a CBSA to reclassify. If the secretary changes the regulations and says, instead of say 35, it's now going to be the 10. The secretary is going to come before this court and say, we get it. We have to reclassify, but they can't go there. And that's not what the statute wants. So, so let me just, let me just posit this though, because I mean, you led with a point that I think probably everyone agrees with, which is this is, this is complex. But let's just say that you can't reclassify an entity in three years, but let's just say that the secretary says, all right, well, we can't reclassify you. But what we're going to do is we're going to now start making wage index decisions, differential wage index decisions among entities within the same CBSA. So maybe they would say, all right, we got this statute that says temple. You're still in the New York city area, but you're going to get the Vineland wage index. Is that permissible? I don't think it is your honor, because I think there's going to be some obligations to treat hospitals in a particular CBSA. The same, but that's also not what happened here. The agency wants to go through a process where it fundamentally changes how it does wage indices and reclassifications in life. That's a longer process than occurred here. So I think you still have the question of what does three year mean three years mean. And under the secretary's interpretation, it means essentially nothing. It means you can go anywhere. The secretary says, and that complies with the statute. And that really guts the statute. Because there are requirements as to the area that you can go into that are established by regulation. There are requirements. Correct. And the secretary in this, this change has in fact changed the requirements. It's changed it and said, under these circumstances, we're not honoring what we require to happen by statute and regulation. We're going a bit of an ad hoc change. Some are going to go here. Some are going to go there. Some are going to go nowhere. According to the specifications of where they can go that have been established by regulation. It's not just like throwing darts because they have to be within contiguous or within certain distance of, of, of a, well, I can't recite all the qualifications, but, but you know what? They're in there. Who could qualify for what area? Yes, your honor. And, and we met them. Temple met them and the agency is the old New York area. You meet them for the new Vineland area. You don't, do not meet them for the new New York area. Absolutely. That is correct. And that means that the next time that temple applies three years from the last application, it probably will not be admitted to New York, but for three years, it needs to be, it's supposed to be. And that's what the statute says. If I can circle back very, very briefly on the jurisdictional claim, the defense didn't raise this before the district court. And I think the fact that there is a pathway, there's a recognized path pathway in Geisinger Lawrence and Memorial Bates County, two of them, court of appeals decision, one from the third circuit that says there are facts that do not require you to go through that channeling process. The fact that that fact-based pattern exists and the secretary essentially agreed up until April 2nd, that the fact that this case satisfied that, that exception, I do believe it's too late for them to contest what they've agreed to. There wasn't, there wasn't any doubt as to the pathway we were pursuing. The agency at the highest levels was involved in this case. This was a very important case. Two offices of the assistant U S attorneys were involved in the district attorneys, excuse me, one in Eastern district of Pennsylvania, one in New Jersey. And they agreed that that was the appropriate pathway that template followed. Otherwise there never would have been any briefing. Nobody would have wasted the district court time. So to the fact that, to the extent that there is a pathway, and if the court is going to say there's not, then that is contrary to Geisinger in the third circuit. Let me just tease this out one. It's a, it's a, it's a matter that goes to subject matter jurisdiction. So unfortunately these notions of timeliness in subject matter jurisdiction, there is a little bit of a gotcha to new, new subject matter, jurisdiction defenses. They're just, they're just happening to be, that's just the nature of jurisdiction. But at one level, isn't your, I mean, doesn't it really depend in terms of the equities on whether this exception to account for Michigan academy are basically the practical equivalent of a total denial of judicial review. That's law based, then we can do that right now to the extent that, that that's fact-based and facts or at least open facts have been put before us that you think we should adjudicate. Then, then maybe we're in it. We're just in a different situation, but do you think that that's law-based or fact-based? Because when the Supreme court addressed it, at least I don't know the answer practical suggested it's fact-based, but a lot of their analysis looks to be independent of specific facts. I think it is a little bit of both your honor. And I think it is hard. It's like everything else. These are evolving concepts. So I think you have this blend of law and you're right that raising subject matter jurisdiction itself is never waived as a legal concept. Having said that when you do have a fact-based patterns that are exceptions to that channeling requirement, and we know we have them, the third circuit had the case just a few years ago that didn't follow that channeling process. So we know it exists. So I agree on that. There's a legal aspect to it for sure, but we also have this fact pattern. And if the agency has agreed and they in fact have that this case didn't need to require that kind of channeling, I do argue that it's late now and too late now for the agency to say, Hey, wait, we can test those facts that we agreed to. We can test that. We agreed that the PRB is not the appropriate forum for this to be heard in the first place. And the fact of the matter is your honor, this case isn't before the courts for years. If it gets to the PRB, it's just not happening. So I know I'm over time. I'll stop there. I'm happy to answer any questions. If you have any on either the jurisdictional issues or the substance of the other claims. I have, I don't think I have anything for, you know, I have one further question. Does the channeling statute require, I've read some cases that suggest it requires presentation, but exhaustion can be weighed. And so if we look at this one and we say, look, the only requirement is presentation and exhaustion can be later weighed. Then it, it, it may just kind of take out a lot of these other concerns to say, for whatever reason, we have a presentation requirement. The fact that exhaustion can be waived might be a game changer in terms of practically, you know, being the practical equivalent of a total denial of judicial review. But do you see this channeling the statutory channeling requirement having both a presentation mandatory and then an exhaustion waivable requirement? I don't your honor. And I want to emphasize a number of courts also didn't see that. So this would be a perspective policy. I would argue that the court should be establishing if it's so chooses, but the fact of the matter is once you present it to the agency, it enters that administrative process and will not, will not likely leave that process for quite a long time, at which point temple will have already made its decision on this withdrawal. Voluntary is perhaps an Orwellian term by the agency to characterize this as voluntary. But so, so if you present it to the agency, it's not clear to me that you get to then get out of that process. Time limits on presentation and response. The answer is, is perhaps, and the agency talks about expedited judicial review. There's no indication at all that expedited judicial review would be granted here. And if it's not granted, I don't think the argument can be, you have to present it to the agency. If everything works perfectly for the, for the hospital, if you have to have the matter before the agency, then it has to be before the agency, in my opinion. And the agency has the right, the PRB has the right to say, no, we're keeping this for five years. And incidentally, roughly 30% of their cases are five years or older. And so, so I guess my thought is maybe, I mean, again, maybe this, you know, I don't know. I mean, I'm not, I'm just trying to think of what's possible. But maybe an entity like Temple university hospital would present to the agency, to, to, to the board and say, hi, we're presenting. We need an answer ASAP because as you know, you know, we, we want to go, we want to know if we should be in Vineland or someone somewhere else. We need a decision from you really quickly. We've met our real requirement of presentation and we think the rest of exhaustion is going to be futile. If you don't let us know that you've got a schedule for resolving this in a way that we can make the decisions that we need to make. And if too much time passes, then you show up in federal court and say I met the presentation requirement and exhaustion appears to be futile because the ship is going to sail with, without us having the benefit of this decision. And at least there you get into, to really exposing maybe a vulnerability of the channeling injunction, but absent presentation, it's harder to find that same vulnerability to, to exploit that same vulnerability. What do you think? Well, I think that, I think going forward, it seems to be the policy of the third circuit wants to have for every case that involves the MGS CRB, then it's certainly free to announce it. That would be contrary to what the court decided just two or three years ago in deciding the Geisinger case. And I want to get with the timing of this administrative process, because the secretary did talk about this expedited judicial review process, which is sometimes an oxymoron. Critical to that process is it doesn't happen. Nothing moves. Even if the court, excuse me, or the agency were to decide it should be expedited. That takes time. The agency first have to have to find and review the matter, decide it has jurisdiction. It has to get, make sure that the case is complete. And we noted that the agency is at a particular deficit in terms of time right now with the pandemic. And so the circumstances of this case are particularly unique. So I would just close and I know I'm over my time. So I will close to ask any more questions by saying if the court is saying that something is different than was required for, I think the last decade in every case that's been filed related to the MGS CRB, then I think it should be a perspective thing, especially in the circumstances where the government itself right up until April 2nd said, yeah, this case has factual things that require the immediate consideration of this matter by the court. And so I'll end at that barring any more questions that I'm happy to respond to. Thank you. Hearing no questions. We'll take this matter under advisement. I note on behalf of myself that I compliment both counsel. This is a really complex matter. Reading your briefs was actually easy, relatively easy, especially given the complexity of this matter. I know that's really, really hard to do. And your arguments today, in my view have been excellent. So just thank you for on an expedited case for putting in the time to give such clarity and good reasoning in your brief that the court will benefit from that. And that is the fruit of both labor and skill. So thank you both. Thank you very much. Thank you. All right. With that, we'll take the matter under advisement.